THE STATE ex rel. J. L. ERWIN v. E. C. HOLMAN et
al., Justices, and E. B. CAMPBELL, Clerk, of the
County Court of Callaway County.

Division Two, December 3, 1923.

1. **MANDAMUS: Demurrer to Return.** Where the writ of mandamus
issues, respondents file their return thereto and relator his de-
murrer to the return, the case is at issue on the pleadings.

2. ———: ———: **When Writ Will Issue: Propositions Taken as
True.** In this case four propositions are taken as true and ad-
mitted to be the law, namely: (a), Facts well pleaded in the
return to an alternative writ of mandamus are confessed by de-
murrer to the return; (b), Mandamus is not a writ of right, but
one resting solely in a wise legal discretion; (c), To authorize a
peremptory writ in mandamus, it is essential that the relator
have a clear legal right to the thing demanded and that it is
the imperative duty of respondents to perform the act the relator
by the writ seeks to compel them to perform; and, (d), A peremp-
tory writ of mandamus commanding an inferior court, tribunal,
or ministerial body to act will not issue until it is first established
by the evidence that such respondent has been legally requested
to act and has illegally declined to act.

3. ———: **Right to Maintain: Failure to Levy Maximum Rate of
Taxes: No Injury to Relator.** The county had voted a special
levy of a tax not in excess of five cents on the hundred-dollar
valuation for hospital purposes, and under that authorization
serial county bonds in the amount of $75,000, due in twenty years
and payable serially after five years at the option of the county,
were issued, and relator is the owner of Bond No. 44. Afterwards
at another election the county voted a further or additional tax
not in excess of five cents to complete and equip the hospital,
and under that authorization bonds in the amount of $37,500 were
issued. The county court in 1923 levied for hospital purposes
a tax of only five cents on the hundred-dollar valuation, and
relator, a resident taxpayer, brings mandamus to compel a levy
of ten cents. The return, whose allegations of facts are admitted
by a demurrer thereto, states that all interest on the bonds has
been paid as it accrued, and that a levy of five cents will pay all
interest for the current year and provide a sinking fund of $5,000

State ex rel. Erwin v. Holman.

to pay the bonds first payable and leave a surplus of nearly $4,000 for hospital expenses. *Held*, that relator is in no wise injured by the court's levy of only five cents, and is not entitled to maintain the suit. And aside from the fact that these allegations in the return demonstrate that relator is not injured, it must be assumed that the county court will not hereafter fail to perform its duty, but will make such a levy as will pay the accruing interest and provide a proper sinking fund to pay the bonds as they become due.

4. ———: **Previous Demand: Made by Another.** Unless relator expressly requested the county court to make a levy of certain taxes for hospital purposes before bringing his suit, and such demand was illegally declined, he cannot maintain mandamus to compel such levy. Nor was a demand made by the trustees of the hospital of any avail to a sole relator who is not a trustee, although he be a resident taxpayer.

5. ———: **Maintaining Suit for Trustees.** Since the statute (Secs. 12612, 12618, R. S. 1919) requires the trustees of a county hospital to file a report of their receipts and expenditures during the previous year, and to certify the amount necessary to maintain and improve the hospital for the ensuing year, and provides that the county court may appropriate, in addition to the tax for the hospital fund, not exceeding five per cent of its general fund for the improvement and maintenance of the hospital, a private taxpayer cannot maintain mandamus to compel a higher levy and to secure for the trustees additional money for maintenance and improvements, where they cannot, because of their failure to file said report and make such certification, maintain the suit themselves.

*Mandamus.*

ALTERNATIVE WRIT QUASHED.

*W. B. Whitlow* and *Emil P. Rosenberger* for respondents.

(1) Facts well pleaded in the return to the alternative writ of mandamus are confessed by demurrer thereto. State ex rel. Clark v. Smith, 104 Mo. 661; State ex rel. Jungmeyer v. Hunter, 198 Mo. App. 249; State ex rel. Holmes v. Doe Run Lead Co., 178 S. W. 298. (2) A writ of mandamus is not a writ of right, but one resting solely in a wise legal discretion. State ex rel. v.

Bridge Co., 206 Mo. 136; State ex rel. Paring Co. v. St. Louis, 251 Mo. 274. (3) In order that a writ of mandamus may be available, it is essential that the relator have a clear legal right to the thing demanded, and it must be the imperative duty of respondent to perform the act required. State ex rel. Hartman v. Thomas, 245 Mo. 65; State ex rel. Kirn v. Stone County Treas., 269 Mo. 334, 342. (4) A writ of mandamus will not issue commanding an inferior court, tribunal or ministerial body to act until it is first established by the evidence that said court, tribunal or ministerial body has been legally requested to act and that it has illegally declined to do so. State ex rel. Abbott v. Adcock, 225 Mo. 335. (5) A relator is not entitled to a peremptory mandamus to enforce the collection, of an ordinary county indebtedness prior to that indebtedness being reduced to judgment. State ex rel. White v. Clay County, 46 Mo. 231; State ex. rel. v. Hill, 272 Mo. 212. (6) Relator is not the real party in interest and hence ought to have no standing in this court. (7) To compel the county court by mandamus to levy a tax of ten cents on the one-hundred-dollars assessed valuation as of June 1, 1921, for hospital purposes, would be violative of the spirit of Sec. 12865, R. S. 1919, as found in Laws 1921, p. 678. (8) The official act of an officer committed in the exercise of a discretion intrusted to him, when there is nothing to justify the idea that the act is capricious, oppressive, fraudulent, or aught else than the result of his honest judgment, is not subject to review in a mandamus proceeding. State ex rel. v. St. Louis, 158 Mo. 505; State ex rel. Granville v. Gregory, 83 Mo. 137; Vitt v. Owens, 42 Mo. 512.

*N. T. Cave* and *Baker & Baker* for relator.

(1) Relator is not attempting to collect an ordinary county debt, but is attempting to compel the county court to follow the clear mandate of the County Hospital Law and the vote of the people of the county under that law,

and as a bondholder and taxpayer he has the right to maintain this action for that purpose. (2) Relator would further suggest that the question involved in this proceeding is one which must arise each year until it has been finally determined by this court and it would be for the protection, and to the interest, of all parties concerned to have this question finally adjudicated at this time. (3) Respondents seem to be under the impression that the county hospital commissioners have the right to designate the tax levy, but such is not the fact under hospital law, nor is it the contention of relator. Our position is that neither the county court nor the hospital commissioners can change the tax levy as voted by the people. (4) The statute does not say the county court may levy such a tax, neither does it say that they shall levy such tax as may be needed within limits authorized by such election, but uses the mandatory terms "shall levy." Sec. 12610, R. S. 1919.

RAILEY, C.—On June 1, 1923, the above-named relator filed in the Supreme Court a petition for a writ of mandamus against the above named respondents. The petition alleges, and respondents' return admits, that the relator, John L. Erwin, was, at all times mentioned in the alternative writ of mandamus, a resident tax-paying citizen of Callaway County, Missouri; that he is now, and for two years last past has been, the owner of one of the Callaway County Hospital bonds, hereafter mentioned; that respondents Holman, Moore and Crump are now, and were at all times mentioned in said writ, the duly elected, qualified and acting justices of the County Court of Callaway County, that respondent Campbell is the elected, qualified and acting clerk of said county court. The petition alleges, and the return admits, that by virtue and in accordance with the provisions of an Act of the Legislature found at page 145 of the Laws of Missouri for the year 1917, there was submitted to the qualified voters of Callaway County aforesaid, at a special election legally held on November 5, 1918, for that purpose, a

proposition as to whether there should be levied upon the assessed property of said county, a tax not in excess of one-half mill on the dollar for the purpose of purchasing real estate for hospital purposes, for the construction of hospital buildings and for the maintenance of same, or for either or all of such purposes; that the form of the ballot used at said election was as follows:

"For a half-mill tax for a bond issue for a public hospital and for maintenance of same.          Yes.
                                                  No."

That at the election so held, more than a two-thirds majority of the votes cast at such election voted "yes;" that the ballots were duly canvassed by the county court aforesaid and the proposition declared carried; that by such election the county court aforesaid was directed by the voters of said county to levy each year thereafter, for a period of twenty years, a maximum tax of one-half mill on each one-dollar valuation of taxable property within said county for hospital purposes; that thereafter it was discovered by the citizens of Callaway County that said tax was not sufficient to build a hospital, such as the board of trustees of said hospital wanted, and another election was held in said county, on February 14, 1920, to submit to the voters of said county the proposition as to whether there should be levied an additional tax not in excess of one-half a mill on the dollar, for hospital purposes; that at said second special election said proposition of voting an additional tax, not in excess of one-half a mill on the dollar for hospital purposes, was submitted to the voters of the county, and that the same was duly carried; that said two elections mentioned in the foregoing writ were had and done under the provisions of said law of 1917 supra, and as carried into and now forming Article 27 of Chapter 111 of the Revised Statutes 1919; that by said two special elections, the county court aforesaid was directed to levy a total tax, not in excess of one mill on each dollar, or ten cents on the hundred-dollar valuation, on all property within said county, for hospital purposes, and that, when levies are made by the county court, it is the duty of

said county clerk to extend such tax upon the tax books prepared by him; that a board of trustees has been duly appointed, elected, qualified and organized under the law of 1917 supra; that after the first special election heretofore mentioned, held on November 5, 1918, in said county, for the purposes herein mentioned and referred to in the foregoing writ, the county court of said county issued bonds in the sum of $75,000 to secure money with which to build a hospital, and that all of the bonds were sold; that after the second special election herein mentioned, said county court issued additional bonds in the further sum of $37,500, and that all of said bonds were sold; that the hospital tax voted at the two special elections aforesaid was for the purpose of paying the interest and principal of the hospital bonds aforesaid, when the same should fall due; that a hospital has been constructed in the city of Fulton, Callaway County, aforesaid; that the same has been open and receiving patients for about two years; that judgments in excess of $6,000 have been obtained in the Circuit Court of Callaway County aforesaid against the hospital fund; that in April, 1923, the board of trustees aforesaid filed with the county clerk aforesaid, a written demand, asking the county court to make a mill levy on the dollar-valuation for the year 1923; that for and in the year 1923, the judges of the county court aforesaid made for hospital purposes a levy of a half mill, or five cents on the one-hundred-dollar valuation.

The respondents in their return deny each and every allegation in the alternative writ of mandamus contained, not herein specifically admitted to be true. The return further alleges that the petitions presented to the county court, calling for the elections aforesaid, did not state that a tax of one-half a mill on the dollar, or five cents on the one-hundred-dollar valuation, was to be levied, but stated that the tax to be levied should not be in excess of one-half of one mill on the dollar valuation, or five cents on the one-hundred-dollar valuation; that the voters at said elections understood that the maximum amount of tax that could be levied for hospital purposes, if both

elections carried, was one mill on the dollar, or ten cents on the one-hundred-dollar valuation, and that the tax to be levied could be as much less as in the judgment and discretion of the county court would raise a sum of money sufficient for the purposes intended; that when the second election was held the total assessed valuation of Callaway County aforesaid, as of June 1, 1919, including merchants, railroad, telegraph and telephone companies, amounted to $15,250,430, and that a ten-cent levy on the one-hundred-dollar valuation for the year 1920 would, and did, produce a total tax of $15,520.43; that when said second election was held the taxpayers of said county had in mind the assessed valuation of June 1, 1919, supra, amounting to $15,250,430, and also had in mind that the ten-cent levy on a one hundred-dollar-valuation would produce a tax for hospital purposes not in excess of $15,250.43, which said taxpayers deemed ample and sufficient as the maximum amount of tax to be raised in any one year for the purpose of paying the interest on all of the bonds issued and to be issued, to create a sinking fund to pay said bonds when due and to maintain said hospital; that when the first election was called it was estimated by the board of trustees of the hospital that $75,000 would be sufficient to build and equip the hospital; that bonds of the above amount were issued; that 150 of said bonds were issued in denominations of $500 each, payable in twenty years after date, or at the end of five years at the option of the county court, to bear annual interest at the rate of five per cent payable semi-annually, and were in the form prescribed by the statute; that it later developed that the sum of $75,000 was insufficient to erect and equip a hospital, such as the board of trustees described; that a second election was held and bonds issued thereunder by the county court in the sum of $37,500; that said bonds were 75 in number for the principal sum of $500 each, bearing six per cent annual interest, payable semi-annually, due on or before twenty years after date, with the privilege, on the part of the county court, to make payment thereof at the end of five years, and that each of said bonds, so issued, was in the

form prescribed by the statute; that on June 1, 1918, the assessed valuation of said county was $14,428,400, including merchants, railroads, telegraph, telephone and other corporations; that for the year 1919, the county court, acting under authority granted it by the first special election, made a levy for hospital purposes of one-half a mill on the dollar, five cents on the one-hundred-dollar valuation, and thereby a tax of $7,214.20 was raised; that said levy was made under the first election; that of said sum, $3750 was required to pay the interest on the bonds issued under the first election, and that the remainder was paid to the board of trustees of the hospital to help pay the running expenses thereof; that on June 1, 1919, the assessed valuation of said county was $15,250,430, as heretofore stated; that the second election had been held, and for the year 1920 a tax for hospital purposes was levied by the county court of one mill on the dollar, or ten cents on the one-hundred-dollar valuation, which raised a tax for hospital purposes of $15,250.43, and that out of said sum the interest on the total amount of hospital bonds issued, to-wit, $112,500, was paid, and the remainder of said tax was paid to the board of trustees of the hospital to help defray running expenses.

The return further alleges that in 1921 the State Board of Equalization more than doubled the assessed valuation of Callaway County property, and that as a result thereof the assessed valuation of said county, including merchants, railroads, telegraph and telephone companies and other corporations, was $33,706,400, and that thereupon the county court, for hospital purposes, made a levy of one-half mill on the dollar-valuation, or five cents on the one-hundred-dollar-valuation, which the county court deemed sufficient, and as a result of such levy, the amount of the 1921 tax amounted to $16,853.20, being largely in excess of the amount raised in 1919 and 1920; that out of the 1921 tax, the interest on the hospital bonds was paid, and the balance was turned over to the board of trustees of said hospital to help defray the run-

ning expenses thereof; that the assessed valuation of Callaway County, as of June 1, 1921, including the merchants and corporations aforesaid, was $40,650,980, and that for hospital purposes the county court made a levy of only one-half a mill on the dollar-valuation, or five cents on the one-hundred-dollar-valuation, which the said county court in its discretion, deemed sufficient, and as a result of such levy the amount of the 1922 tax for hospital purposes amounted to $15,325.49, and that out of said 1922 tax the interest on the hospital bonds was paid and the balance turned over to the board of trustees aforesaid, to help pay the running expenses of the hospital.

The return further alleges that it had been the plan of respondents to pay the bonds aforesaid before their maturity, and retire the same; that as to the first issue, they planned to retire $5000 of said bonds each year, commencing on June 1, 1924, and to retire $2500 worth of the second issue on June 1, 1925, and to retire a like amount each year until said bonds had been paid in full; that said plan is simply a tentative one, and a matter of discretion on the part of respondents; that as of June 1, 1922, the total assessed valuation of Callaway County property, exclusive of merchants, railroads, telegraphs and telephone companies, is $26,648,626, and that the levy of a half mill on the dollar valuation would produce a tax of $13,324.31; that the assessed valuation of the merchants, railroads, telegraph and telephone companies, in said county, as of June 1, 1922, when returned by the State Board of Equalization, will probably amount to $3,250,000; that a half mill tax thereon will produce the additional sum of $1625, and that the total assessed valuation for said period will probably amount to $29,898,-626; that a half mill tax on the dollar-valuation of the last-named sum would produce $14,949.31 for hospital purposes; that, in the exercise of a sound judicial discretion, they have determined that a half mill levy on the dollar-valuation will raise a tax for hospital purposes of $14,949.31 for the year 1923, and that they have made

a levy accordingly; and the levy so made this year on the assessed valuation of said county is more than ample and sufficient to pay the interest on all of the bonds issued, which annual interest amounts, on both issues, to the sum of $6000, and will enable a payment to be made of $5000 on June 1, 1924, on $5000 worth of bonds of the first issue, and will leave a handsome balance to be paid to the board of trustees for maintenance purposes.

The return further avers that the bond owned by the relator is No. 44 of the first issue; that if the original plans of respondents, as to the retirement of said bonds before maturity are carried out, said bond No. 44 would not be subject to retirement until the year 1928, under any circumstances.

It is further averred that, as long as a levy for hospital tax is sufficient to pay the interest on the hospital bonds, including that of relator, and to provide for the payment of the bonds on or before maturity, it is no concern of relator what amount of tax is levied for hospital purposes; that it is no concern of his whether the hospital is operated or closed down; that the total wealth of Callaway County is pledged for the payment of the interest and principal of said hospital bonds, and that relator is not now, and has not been at any time in the past, in danger of losing the principal of his bond or the interest thereon.

The return, in referring to the $6000 judgment against the hospital fund mentioned in the alternative writ of mandamus, alleges that, although bonds have been issued by the county in the sum of $112,500 for the erection and equipment of the hospital, the board of trustees, in violation of the law, and in excess of their authority, and knowing that they only had at their disposal $112,500 to erect and equip said hospital, built the same and equipped it, at a cost in excess of $112,500; that they contracted indebtedness in violation of the law, and in excess of the amount they had to spend for that purpose in the sum of $6000; that said board of trustees issued

warrants for said excess sums, and asked these respondents to order payment of same, which they refused to do; that the holders of said warrants instituted an action in the circuit court of said county, by mandamus, to compel these respondents to approve said warrants; that said mandamus proceeding was determined adversely to these respondents, who appealed from said judgment to this court, and said cause is now pending here; that respondents are advised and believe that there is merit in their appeal; that said warrants were issued without authority of law, and that the hospital fund is not now, and never will be, liable for the payment thereof; that the question and matter of said judgments are foreign to any issue in this case.

For further return, respondents say, that, when said elections were held, the assessed valuation of said county was only about one-half of what it is now; that in voting for a levy, not in excess of one mill, or ten cents on the hundred dollar valuation, the taxpayers took into consideration the assessed valuation of the county at that time, and took into consideration how much such a tax would raise; that they then determined that a levy of the maximum amount of such tax would be ample and sufficient to pay the interest on the bonds, and to create a sinking fund for the retirement of said bonds, so that they could all be paid at and before maturity; that the taxpayers never intended paying, and understood that they would not be taxed for, the maintenance of the hospital; that in voting said bonds, the taxpayers understood that, after the hospital had been opened and equipped at the expense of the taxpayers, thereafter, it would be self-sustaining, and would not be a burden or drain on the taxpayers; that various controversies have arisen between the county court on the one hand, and the board of trustees of said hospital on the other hand, by reason of the fact, as respondents aver, that said trustees are running said hospital in an extravagant manner regardless as to cost; that they are expending unnecessarily large sums of money for the maintenance thereof, and are running the taxpayers largely in debt

on account of the maintenance of said hospital in the way it is managed; that these respondents, claiming to be the representatives of the taxpayers of the county, and guardians of its treasury, have refused to give their approval to the method and manner in which said hospital is being run and conducted by said trustees; that in the opinion of respondents, said hospital could be properly run and maintained on a self-sustaining basis, and that it could be made to pay its own way; that the taxpayers never contemplated that if the valuation of county property should be doubled the full amount of the tax should be levied, and hence, respondents, in the exercise of their discretion, levied that which they deemed sufficient to protect the interest of all bondholders and, at the same time, enable the hospital to be kept open and maintained.

Respondents further aver that this suit is not brought in good faith by relator because he believes he is in any danger of losing the interest on his bond, or having the payment thereof deferred, or not having his bond paid at maturity, but that this suit was instigated by the board of trustees of said hospital, who have no remedy or standing in court, and who chose this relator to bring this suit; that relator has given the use of his name to the board of trustees aforesaid; and that they are the real parties in interest in this suit, and are aiding and abetting in the prosecution thereof; that these respondents have offered to purchase and pay relator the full value of said bond No. 44, with accrued interest thereon; that he is holding on to said bond in order to maintain his standing in this case; that respondents now offer to purchase said bond and to pay relator the full face value of same, with all accrued interest thereon.

For further return, respondents say that, having shown by this return that the tax of one-half mill on the dollar valuation is amply sufficient to pay the interest on all hospital bonds, and to retire $5000 worth thereof, ten in number, on the first day of June, 1924, if respondents see fit to do so, and have a portion for the mainte-

nance of the hospital, this court is without jurisdiction, and has no authority by mandamus to compel respondents to levy a further tax, in order to raise such additional funds as the board of trustees of said hospital may desire in their management and maintenance of same; that the question as to whether said hospital is to be kept opened and maintained at a loss to the taxpayers of said county, provided it cannot be run on a self-sustaining basis, is purely a local question to be determined by the citizens of said county, and these respondents, the judges of the county court, who are the representatives and the business agency of the citizens of said county.

The return further alleges that when said Act of 1917 (now Art. 27, Chap. 111, R. S. 1919) was passed, the Legislature intended that the county court of a county which had established and is maintaining a county hospital should have some discretion as to the expenditures made by said board of trustees, and that it was intended by said act, that the county court should have a certain jurisdiction and control over the board of trustees of said hospital, and that it was never intended by said act that the county court should be merely a figurehead; that it was not intended, after a county hospital had been established, that it would be the mandatory duty of the county court of said county to levy the full and maximum amount of tax authorized by the voters to be levied for hospital purposes, and that the only duty which the county court has to perform is to annually levy taxes, as may be demanded by the board of trustees of the hospital, and then to order such warrants dawn, as may be requested and desired by the board of trustees of the hospital when they present to the county court authenticated vouchers. Respondents aver that such is not the proper construction of said Act of 1917, authorizing the establishing and maintaining of county hospitals. Respondents further aver that, if the county court is not vested with judicial discretion in respect to the foregoing matters, Section 12612, 12613, 12619, 12620, 12623, 12624, 12625 and 12626 are unconstitutional, in this, to-

wit: Section 36, Article 6, Constitution of Missouri, pro-
vides, that in each county there shall be a county court,
which shall be a court of record, and shall have jurisdic-
tion to transact all county, and such other business as may
be prescribed by law. It is further averred, that the run-
ning, operation and maintenance of a county hospital is
county business, in which all the county taxpayers are
directly concerned; that the above sections of our Statute,
if construed as above mentioned, would take away from
the county court its jurisdiction to transact county busi-
ness, and in regard to a public hospital; that said act, if
construed as above mentioned, would divest a county court
of all of its jurisdiction and right to participate in the
management of a county hospital; that the several sec-
tions of our statute supra, if construed as above men-
tioned, would be in direct contravention of the above sec-
tion of our Constitution.

The return further alleges that when the State Board
of Equalization, in 1921, and in assessing the valuation
in the various counties in the State as of June 1, 1920,
raised and doubled and trebled the assessments in many
of said counties; that it was the general plan of said Board
of Equalization to raise values, but to cause levies to
be lowered; that in view of the fact, that the assessed
valuation of Callaway County was raised as of June 1,
1920, $18,455,970 over the valuation as of June 1, 1919,
and in view of the fact that a half mill levy on the dollar-
valuation, or five cents on the one-hundred-dollar-valu-
ation, produced and raised a tax for hospital purposes
of $16,853.20 for the year 1921, based on the valuation
as of June 1, 1920, to compel these respondents to levy
the full mill tax, or a tax of ten cents on the one-hundred-
dollar-valuation, as prayed for by relator, on the assessed
valuation of June 1, 1922, would raise a tax for hospital
purposes of $29,898.62 for 1923, or $14,573.13 in excess
of 1922, and would violate the spirit of Section 12865,
Revised Statutes 1919, as found in the Laws of 1921,
at page 678, wherein it is provided, that the county
court may not, after the year of 1921, order a rate of tax

levied that will produce mathematically more than ten per cent in excess of the tax levied for the previous year.

For further return respondents say, that not only is this application not presented in good faith by relator for his own use and benefit, but said application is not timely made; that pending this litigation, these respondents could not hold up the collector's books; that the taxes levied by the county court, for the 1923 taxes, based on the assessment as of June 1, 1922, have been extended and the books have been delivered by the county clerk to the Collector of Callaway County, so as to enable the said collector to get his books and records in proper shape, so that he can begin the collection of taxes on the first day of September, 1923, when they become due; that the probabilities are that, by the time this case is determined by this court, many of the taxpayers of said county will have paid their taxes for the year 1923; that it would be too late, in the orderly conduct of the affairs of said county, for this honorable court to now order said taxes to be levied for the year 1923, on the assessment of June 1, 1922.

The relator filed a demurrer to the return and, hence, the case is pending here upon the pleadings.

I.   The relator filed in this court a petition for a writ of mandamus against the respondents as judges and clerk of the Callaway County Court. An alternative writ was issued, and to which the respondents have filed an elaborate return. Relator demurred to said return and, hence, the questions at issue are presented by the pleadings aforesaid.

Respondents in their brief, under the head of "Points and Authorities," have formulated four separate and distinct propositions of law, numbered from 1 to 4 inclusive, which they assert should be considered by the court in passing upon this controversy. Omitting the authorities cited, the above propositions, in their order, read as follows:

Admitted Propositions.

(1)   "Facts well pleaded in the return to the alternative writ of mandamus are confessed by demurrer thereto."

(2) "A writ of mandamus is not a writ of right, but one resting solely in a wise legal discretion."

(3) "In order that a writ of mandamus may be available, it is essential that the relator have a clear legal right to the thing demanded, and it must be the imperative duty of respondent to perform the act required."

(4) "A writ of mandamus will not issue commanding an inferior court, tribunal or ministerial body to act until it is first established by the evidence that said court, tribunal or ministerial body has been legally requested to act and that it has illegally declined to do so."

The relator in his reply brief, refers to the foregoing propositions as follows:

"There is no controversy or dispute about the general principles of law announced in points 1, 2, 3 and 4 in respondents' brief."

Accepting the above propositions as correctly stating the law, we have not deemed it necessary to set out the authorities cited in support of same.

At the conclusion of his abstract relator says:

"When the people of the county have elected to erect and maintain a hospital under the provisions of Article 27, Chapter 111, Revised Statutes 1919, and have voted a tax of ten cents on the one-hundred-dollar-valuation for those purposes, has the county court under its authority to levy taxes the right and authority to levy a different rate than that voted by the people?"

On the other hand, respondents assert, that relator has no legal right to maintain this action. They further insist that, even if relator was authorized to prosecute the same, the issues above mentioned by relator could only be determined upon a consideration of the facts detailed in their return.

While only a few counties in the State have attempted to establish county hospitals, yet others may seek to do so in the future and, hence, our rulings on the questions presented here should be carefully considered. It is important at the outset to determine whether the relator

has the legal right to maintain this action. If he has, the foregoing questions will come up for consideration. On the other hand, if he has no legal right to maintain this action, it becomes our plain duty to quash the alternative writ of mandamus, without expressing any opinion as to the legal status of the other questions presented. Keeping these things in mind, we will endeavor to pass upon relator's legal right to maintain the suit.

II. This action on its face purports to be brought by relator solely in his own behalf. He claims the right to maintain same, because he is a taxpaying citizen of Callaway County, Missouri, and is the owner of a $500 hospital bond, drawing five per cent interest, issued under the first election mentioned in the pleadings.

Right to Maintain Mandamus.

Respondents' return alleges, and the demurrer admits, that on June 1, 1922, the assessed valuation of all the property of Callaway County was approximately $29,898,626 and that a halfmill tax on the dollar-valuation, or five cents on the one-hundred-dollar-valuation, levied for the year 1923, would produce a hospital tax of $14,949.31. The return further alleges, and the demurrer admits, that said last named amount is more than ample and sufficient to pay the interest on $75,000 of said bonds at five per cent and on $37,500 of the second issue at six per cent, which said interest in the aggregate amounts to $6000; that out of the above levy for 1923, there will also be enough to pay off and discharge $5000 of the first issue of bonds, on June 1, 1924, and still leave a handsome balance to be paid to the hospital board of trustees for maintenance purposes. We are at a loss to understand how the relator has been damaged or injured by the levy of only five cents on the one-hundred-dollar valuation, when the return shows that said levy was sufficient to take care of the interest on said bonds and to provide a sinking fund to retire the same. Aside from the foregoing, in considering a mandamus proceeding of this character, we cannot, in the face of the return,

which must be taken as true, assume, that the county court will hereafter fail to perform its duty, take care of said interest and provide a proper sinking fund as occasion requires.

III. It does not appear from the alternative writ that relator ever legally requested the respondents to make a levy of one mill on the dollar-valuation, or ten cents on the one-hundred-dollar-valuation, for the year 1923, and that the county court illegally declined to do so. In Abbott v. Adcock, 225 Mo. l. c. 363, this court, quoting from State ex rel. v. Associated Press, 159 Mo. l. c. 421, said:

"It is fundamental in the law of mandamus, that it is indispensable to granting the writ, that a prior express and specific demand be made of respondent of that which relator seeks, and that a refusal of such demand occur before relator has any standing in court, or his application for the writ contains any ground for relief."

The fact that the trustees of the hospital may have made such a demand is of no avail to relator, as the trustees are not parties to this action, and relator is suing alone.

In addition to foregoing, Section 12612, Revised Statutes 1919, provides, at the conclusion thereof, as follows:

"One of said trustees shall visit and examine said hospital at least twice each month, and the board shall, during the first week in January of each year, file with the county court of said county a report of their proceedings with reference to such hospital and a statement of all receipts and expenditures during the year; and shall at such time certify the amount necessary to maintain and improve said hospital for the ensuing year."

Section 12618, Revised Statutes 1919, provides, that: "In counties exercising the rights conferred by this article, the county court may appropriate each year, in addition to tax for hospital fund hereinbefore provided for, not exceeding five per cent of its general fund for the

State ex rel. Erwin v. Holman.

improvement and maintenance of any public hospital so established.''

The return charges, and the demurrer admits, that the trustees of the Callaway County Hospital failed to file with the county court in January, 1923, a report of their proceedings, as required by the above law with reference to said hospital, and a statement of all receipts and expenditures during the year; that they failed at such time, to certify the amount necessary to maintain and improve said hospital for the ensuing year. The relator in this case is in no position to litigate the issues which might have arisen, if the trustees of said hospital had complied with the requirements of the statute aforesaid, and were prosecuting this action instead of relator. The return alleges, and the demurrer admits, that the county court in making the levy of five cents on the one-hundred-dollar-valuation, provided for sufficient revenue to take care of the interest on said bonds, to provide a sinking fund, and still leave a substantial sum for the support of the hospital.

The case, when reduced to its last analysis, discloses an effort on the part of relator to secure for the trustees, who were in no position to present the matter, by reason of their failure to comply with the above statute, an additional levy of $14,949.31 for the support and maintenance of the hospital. On the facts disclosed by the record, we are of the opinion that relator has no such interest in the result of this litigation as would authorize us to issue a permanent writ of mandamus in his behalf.

The alternative writ heretofore issued is accordingly quashed, and judgment entered for respondents. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur; *White, J.,* in the result.